IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

IN RE:    CHN CONSTRUCTION, LLC,            Case No. 11-37995-KRH
                                            Chapter 7
                Debtor.

SUNTRUST BANK,

                Movant,
v.                                          Contested Matter

BRUCE H. MATSON, TRUSTEE,

                Respondent.

## MEMORANDUM OPINION

Before the Court in this contested matter[1] is the Motion of SunTrust Bank ("SunTrust") seeking entry of an order granting it standing to pursue certain avoidance actions on behalf of the bankruptcy estate (the "Motion"). A hearing was conducted on the Motion on April 8, 2015 (the "Hearing"). SunTrust requested that the Court authorize it to commence various causes of action under §§ 549 and 550 of the Bankruptcy Code against ten entities (the "Joint Payees") that engaged in business with the Debtor while it operated as debtor in possession prior to conversion of this case from chapter 11 to chapter 7. The chapter 7 Trustee, Bruce H. Matson ("Trustee"), acting in his fiduciary capacity as the representative of the bankruptcy estate, chose not to bring the litigation against the Joint Payees. SunTrust seeks to establish derivative standing so that it may bring the causes of action on the Trustee's behalf.

---

[1] Contested matters are governed by Rule 9014 of the Federal Rules of Bankruptcy Procedure.

At the conclusion of the Hearing, the Court ruled in favor of the Trustee and denied SunTrust's Motion. The Court found that SunTrust was unable to establish a right to assert derivative standing to pursue the avoidance actions over the objection lodged by the chapter 7 Trustee. This memorandum opinion sets forth the Court's analysis and conclusions in accordance with Rule 7052 of the Federal Rules of Bankruptcy Procedure in support of the Court's order entered April 15, 2015.

## Jurisdiction and Venue

The Court has subject matter jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 157(a) and 1334 and the General Order of Reference from the United States District Court for the Eastern District of Virginia dated August 15, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2). Venue is appropriate in this Court pursuant to 28 U.S.C. § 1409.

## Factual and Procedural Background

On December 21, 2011 (the "Petition Date"), CHN Construction, LLC (the "Debtor") filed a voluntary petition under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").[2] SunTrust holds two commercial promissory notes made by the Debtor (the "Notes"). The Notes are secured by liens on the Debtor's assets, including accounts, equipment, deposit accounts, fixtures, furniture, contract receipts, chattel paper, instruments, and general intangibles. As of the Petition Date, the cumulative outstanding balance due under the Notes totaled approximately $256,756.01.

---

[2] 11 U.S.C. §§ 1101–1174. All further references to the Bankruptcy Code are to the Bankruptcy Code as codified at 11 U.S.C. §§ 101 *et seq*.

2

Early in the bankruptcy case, the Court entered a Consent Order Conditioning the Rights of the Debtor in Possession (the "Order Conditioning Rights").[3] The Order Conditioning Rights required the Debtor, among other things, to file monthly financial reports detailing its income, expenditures and cash flow from the operation of the Debtor's business. The Order Conditioning Rights also required the Debtor to establish a debtor in possession account (the "DIP Account") and to deposit all of its income into the DIP Account. All disbursements by the Debtor were required to be made using checks drawn on the DIP Account.

Following entry of the Order Conditioning Rights, the Court entered a consent order between the Debtor and SunTrust on March 8, 2012, that authorized the Debtor to use cash collateral (the "Cash Collateral Order").[4] The Cash Collateral Order authorized the Debtor, in part, "to pay the reasonable, necessary costs and expenses of operating and maintaining its business, including . . . to suppliers and subcontractors necessary to maintain the continuation and going value of the Debtor." Order Granting Motion to Approve Use of Cash Collateral, at 4, Mar. 8, 2012, ECF No. 80. The Cash Collateral Order authorized the Debtor, in addition, "to pay the items shown on the budget attached as Exhibit A." The budget included an expense for

---

[3] The Bankruptcy Code provides for the appointment of a trustee in a chapter 11 case only for cause or in the best interest of the bankruptcy estate. *See* 11 U.S.C. § 1104(a). In most chapter 11 cases, the debtor will remain in possession of its property and operate the debtor's business as the fiduciary of the bankruptcy estate. *See* 11 U.S.C. § 1101(1). Bankruptcy Code § 1107 provides:

> Subject to any limitations on a trustee serving in a case under this chapter, and to such limitations or conditions as the court prescribes, a debtor in possession shall have all the rights . . . and shall perform all the functions and duties, except the duties specified in sections 1106(a)(2), (3), and (4) of this title, of a trustee serving in a case under this chapter.

11 U.S.C. § 1107.

[4] Bankruptcy Code § 363 prohibits a trustee or debtor in possession from using, selling, or leasing cash collateral without the consent of the entity that has an interest in the cash collateral or the approval of the court after notice and a hearing. 11 U.S.C. § 363(c)(2). Cash collateral is broadly defined by the Bankruptcy Code to include cash and cash equivalents in which both the bankruptcy estate and another entity have an interest. *See* 11 U.S.C. § 363(a). In the case at bar, the Debtor's property that had been pledged to secure the Notes constituted SunTrust's cash collateral.

3

payments to subcontractors in the weekly amount of $2,100. However, no budget was attached to the Cash Collateral Order that the parties submitted to the Court for entry. The Cash Collateral Order authorized SunTrust to terminate the Debtor's authority to use cash collateral if the Debtor failed to comply with the terms of the Cash Collateral Order.

Following entry of the Cash Collateral Order, the Debtor did not provide SunTrust with the financial reporting information it was entitled to receive. Subsequently, between June 2013 and May 2014 (the "Blackout Period"), the Debtor failed to file its monthly financial reports with the Court as required by the Order Conditioning Rights. The Debtor advised SunTrust that its failure to file monthly financial reports during the Blackout Period was due to the fact that the Debtor was not operational and on the brink of liquidation. SunTrust, for whatever reasons, chose not to exercise its right to terminate the Debtor's ability to use cash collateral despite the Debtor's failure to comply with the terms of the Cash Collateral Order and despite its failure to file any of the requisite monthly financial reports during the Blackout Period.

On May 28, 2014 (the "Conversion Date"), this case was converted from chapter 11 to chapter 7 on the motion of the Office of the U.S. Trustee. The Trustee was subsequently appointed to serve as the chapter 7 trustee in this case, and he continues to serve in that capacity. SunTrust thereupon conducted an investigation into the condition of its remaining collateral. The investigation revealed that during the Blackout Period, the Debtor had been paid $940,771.60 on account of a subcontract, executed in December 2012, between the Debtor and the Thompkins-Ballard Joint Venture in connection with the construction of a city jail facility. The Debtor had engaged in approximately fifty-five separate post-petition transactions with suppliers and subcontractors of the Debtor (the "Post-petition Transfers") whereunder checks totaling $656,229.92, issued by Thompkins-Ballard Joint Venture and payable to the Debtor and

4

the Joint Payees, had been negotiated by the Joint Payees. The Debtor did not disclose these payments to SunTrust or to the Court. Further investigation revealed that the Debtor retained $284,541.68 of SunTrust's cash collateral, which was not deposited into the DIP Account as required by the Order Conditioning Rights.

SunTrust requested the Trustee to commence adversary proceedings in order to recover the Post-petition Transfers under Bankruptcy Code §§ 549(a) and 550(a). After a careful review and thoughtful analysis of the information and documentation provided by SunTrust pertaining to the Post-petition Transfers, the Trustee concluded that the Post-petition Transfers were not avoidable because the Cash Collateral Order had authorized payment of them. Accordingly, the Trustee declined to bring the avoidance action. As a result of the Trustee's decision, SunTrust filed the instant Motion so that it could pursue the Post-petition Transfers in the stead of the Trustee on behalf of the Estate.

**Analysis**

Section 550 of the Bankruptcy Code allows the trustee to "recover, for the benefit of the estate, the property transferred" under Bankruptcy Code §§ 544, 545, 547, 548, 549, 553(b), or 724(a) "or, if the court so orders, the value of such property." 11 U.S.C. § 550(a). These avoiding powers of the trustee are designed to permit generally for an augmentation of the bankruptcy estate in order to allow for a more just and equitable distribution among creditors.[5]

---

[5] The avoiding powers permit the trustee to undo transfers that occurred for the most part during the pre-petition period preceding the commencement of a bankruptcy case. Section 544, commonly referred to as the trustee's "strong-arm" power, provides the trustee with the power to avoid certain pre-bankruptcy transfers made by the debtor that could have been avoided by a judgment lienholder or a bona fide purchaser. 11 U.S.C. § 544. Section 545 allows the trustee to avoid the fixing of certain statutory liens on the debtor's property. 11 U.S.C. § 545. Section 547 allows the trustee to avoid certain preferential transfers made by the debtor prior to the commencement of the bankruptcy case. 11 U.S.C § 547. Section 548 allows the trustee to avoid fraudulent transfers made by the debtor prior to the commencement of the bankruptcy case. 11 U.S.C. § 548. If a creditor exercises its right of setoff within ninety days of the commencement of the case, § 553(b) allows the trustee to recover the amount offset from that creditor if certain conditions are satisfied. 11 U.S.C. § 553(b). Section 724(a) allows the trustee to "avoid a lien that secures a claim of a kind specified in section 726(a)(4) of . . . title [11]." 11 U.S.C. § 724(a).

5

Section 549 of the Bankruptcy Code allows a trustee to avoid a transfer of property of the estate that occurs after the commencement of the case if that transfer is not authorized by the Bankruptcy Code or by the Court. 11 U.S.C. § 549. SunTrust maintains that, as the Bankruptcy Code prohibits use of its cash collateral and as the Court's Cash Collateral Order did not authorize the Post-petition Transfers directly to the Joint Payees, negotiation of the joint checks was unauthorized. Thus SunTrust seeks to avoid the Post-petition Transfers and recover the moneys paid to the Joint Payees for the benefit of the estate.

Except for very limited situations, only the legal representative of the bankruptcy estate can assert the avoiding powers set forth in the Bankruptcy Code.[6] Section 323 of the Bankruptcy Code provides that the trustee is the legal representative of the estate with the capacity to sue and be sued. 11 U.S.C. § 323. The trustee is a disinterested party[7] who serves in a fiduciary capacity. The extensive duties of a chapter 7 trustee are outlined in § 704 of the Bankruptcy Code. The trustee, as the estate representative, is charged with responsibility for the recovery, preservation, liquidation, and distribution of the chapter 7 bankruptcy estate. The trustee, as the estate fiduciary, has to consider the divergent interests of all the constituent parties in the bankruptcy case. That would include creditors such as SunTrust and parties who did business with the Debtor such as the Joint Payees. The trustee also serves as an officer of the court. *See In re Cutright*, No. 08-70160-SCS, 2012 WL 1945703 (Bankr. E.D. Va. May 30, 2012) ("[A] bankruptcy trustee 'is an officer of the court that appoints him.'") (quoting *McDaniel v. Blust*, 668 F.3d 153, 157 (4th Cir. 2012)) (alteration in original).

---

[6] Section 522(f)(2) of the Bankruptcy Code, for example, authorizes an individual debtor under some circumstances to avoid certain liens to the extent they may impair an exemption. 11 U.S.C. § 522(f)(2).

[7] The Bankruptcy Code defines the term "disinterested person" as one who, among other things, does not have an interest materially adverse to the interests of the estate or any class of creditors. *See* 11 U.S.C. § 101(14).

Section 550(a) and each of the sections of the Bankruptcy Code enumerated therein provide that it is the trustee (or debtor in possession)[8] who may commence the cause of action to avoid a transfer under the Bankruptcy Code. The Bankruptcy Code's exclusive reference to "trustee" suggests that Congress intended for these avoidance powers to rest squarely in the hands of the bankruptcy trustee, and not in the hands of creditors. The United States Court of Appeals for the Fourth Circuit applied this interpretation to a related provision of the Bankruptcy Code that employed similar language. The Fourth Circuit held that the reference to "trustee" in Bankruptcy Code § 506(c) granted "only trustees [not administrative claimants] the authority to seek recovery of postpetition costs and expenses from the collateral of a secured creditor." *In re JKJ Chevrolet, Inc.*, 26 F.3d 481, 484 (4th Cir. 1994). It follows that only trustees or debtors in possession, and not creditors, can pursue avoidance actions.

Despite this general rule, there are two limited situations where a creditor has been permitted to pursue avoidance actions on behalf of a trustee or debtor in possession. Both of these exceptions have been confined to cases arising under chapter 11 of the Bankruptcy Code and would appear to have little, if any, applicability to chapter 7 cases. While the Fourth Circuit has never decided whether a creditor may bring a derivative suit on behalf of the trustee, it observed in *Scott v. National Century Financial Enterprises, Inc. (In re Baltimore Emergency Services II, Corp.)* that:

> Our sister circuits that acknowledge the doctrine have allowed a bankruptcy court to grant derivative standing to a creditor or creditors' committee in two limited circumstances. First, several circuits have recognized such standing when the trustee or debtor-in-possession unreasonably refuses to bring suit on its own. *See, e.g.*, [*Smart World Techs., LLC v. Juno Online Servs., Inc. (In re Smart World Techs., LLC )*, 423 F.3d 166, 176 (2d Cir. 2005)]; *Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d

---

[8] In a case under chapter 11 of the Bankruptcy Code, the debtor in possession has the rights and responsibilities of a trustee. *See supra* note 3.

7

>  548, 583 (3d Cir. 2003) (en banc); *Fogel v. Zell*, 221 F.3d 955, 965 (7th Cir. 2000); *Canadian Pac. Forest Prods. Ltd. v. J.D. Irving, Ltd. (In re Gibson Group, Inc.)*, 66 F.3d 1436, 1440–41 (6th Cir. 1995); *La. World Exposition v. Fed. Ins. Co.*, 858 F.2d 233, 247–48 (5th Cir. 1988).  Second, two circuits have permitted creditor derivative actions when the trustee or debtor-in-possession grants consent.  *See In re Smart World Techs.*, 423 F.3d at 176 n.15; *Avalanche Mar., Ltd. v. Parekh (In re Parmetex, Inc.)*, 199 F.3d 1029, 1031 (9th Cir. 1999).

432 F.3d 557, 560 (4th Cir. 2005).

Chapter 11 of the Bankruptcy Code provides for the first exception—when the trustee grants consent.  Bankruptcy Code § 1123(b)(3)(B) provides that a chapter 11 plan of reorganization may provide for "the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose, of any [claim or interest belonging to the debtor or to the estate]."  11 U.S.C. § 1123(b)(3)(B).  In 2001, the United States Court of Appeals for the Second Circuit decided a case that involved a suit brought by the unsecured creditors' committee, on behalf of the debtors in possession, against various directors and officers of the debtor corporation.  *In re Commodore International, Ltd.*, 262 F.3d 96, 97 (2nd Cir. 2001).  Prior to this decision, the common practice in the Southern District of New York had been for the debtor in possession to routinely turn causes of action over to the creditors' committee, which then would pursue those causes of action on behalf of the debtor in possession, as was the case in *Commodore*.  *See, e.g.*, *id.* at 98.  In *Commodore* the court announced a new stricter test whereby the creditors' committee could only

> acquire standing to pursue the debtor's claims if (1) the committee has the consent of the debtor in possession or trustee, and (2) the court finds that suit by the committee is (a) in the best interest of the bankruptcy estate, and (b) is "necessary and beneficial" to the fair and efficient resolution of the bankruptcy proceedings.

*Id.* at 100 (citing *In re Spaulding Composites Co.*, 207 B.R. 899, 904 (B.A.P. 9th Cir. 1997)).  This test has since been interpreted to also apply to secured creditors, such as SunTrust, in addition to unsecured creditors' committees.  Thus, in a case under chapter 11 the debtor in

8

possession may consent and authorize the unsecured creditors' committee, or even individual creditors, to prosecute avoidance actions on behalf of a chapter 11 bankruptcy estate if the court finds the circumstances appropriate. This, however, is a case under chapter 7 of the Bankruptcy Code and the Trustee has not given his consent. Accordingly, the first exception is inapplicable.

The second exception—when the trustee unreasonably refuses to bring suit on its own—arises in situations where the trustee or chapter 11 debtor in possession is either unwilling or unable to bring the cause of action. This may occur when the debtor is a closely held corporation and the corporation is unwilling to bring suit against the principal that controls it. In such a situation, bankruptcy courts have considered whether a separate entity may pursue the cause of action on behalf of the bankruptcy estate. For example, in *Airocare, Inc. v. Chambers* (*In re Airocare)*, No. 10-14519-RGM, 2011 WL 2133526 (Bankr. E.D. Va. May 24, 2011), three former members of the debtor's board of directors sought leave to pursue counterclaims for breach of fiduciary duty, unjust enrichment, negligence, negligent misrepresentation, intentional misrepresentation, fraud, and conspiracy against four current members of the debtor's board of directors. A separate division of this Court held that in order to prevail the directors had to show: (1) the trustee had unreasonably refused to commence the lawsuit on his own; and (2) the lawsuit was (a) in the best interest of the bankruptcy estate, and (b) is necessary and beneficial to the fair and efficient resolution of the bankruptcy proceedings. The court in *Airocare* ultimately held that the current directors had not satisfied the requisite elements to establish derivative standing. However, the factual scenario is representative of situations in which requests to pursue derivative suits may arise. *See id.* at *3; *see also In re Commodore Int'l, Ltd.*, 262 F.3d 96 (2nd Cir. 2001) (finding that unsecured creditors' committee lacked standing to purse cause

of action based on breach of fiduciary duty on behalf of chapter 11 debtors against various officers and directors of the debtor).

The "unreasonable withholding of consent" test, while appropriate in some chapter 11 cases, breaks down entirely in the chapter 7 context. The Trustee, as an independent fiduciary responsible for the recovery, preservation, liquidation, and distribution of the Debtor's chapter 7 estate, is charged with administering the estate in a manner that is "compatible with the best interests of parties in interest." 11 U.S.C. § 704(a)(1). If the *Airocare* test were applicable to chapter 7 proceedings, the language in the second part of the two-part test would be superfluous. The trustee is already charged with fulfilling those duties in every chapter 7 case. The chapter 7 trustee needs to be provided a substantial degree of discretion in determining how to most effectively administer the bankruptcy estate. The court should review the trustee's actions utilizing a business judgment standard. *See, e.g.*, *In re Cult Awareness Network, Inc.*, 205 B.R. 575 (Bankr N.D. Ill. 1997); *In re Wilson*, 94 B.R. 886 (Bankr. E.D. Va. 1989). "So long as the trustee's decision concerning how or whether to administer an asset or to pursue a cause of action falls within the proper scope of the trustee's business judgment, the trustee's decision [should] be upheld." *In re Consolidated Indus. Corp.*, 330 B.R. 712, 715 (Bankr. N.D. Ind. 2005). The Court finds that derivative standing is not appropriate in chapter 7 cases.[9] The Court will not interpose its own business judgment for that of the Trustee.

But even if the Court were to apply the *Airocare* test, the Court finds that SunTrust has failed to satisfy the requirements of that test. The Trustee's refusal to bring suit under Bankruptcy Code §§ 549 and 550 was not unreasonable. The Trustee gave careful consideration

---

[9] The Office of the U.S. Trustee is responsible for the supervision of chapter 7 trustees. *See* 28 U.S.C. § 586(a)(1). The Trustee was subject to removal if his conduct was deemed unreasonable or detrimental to the bankruptcy estate. No such motion was brought before the Court in this case.

to SunTrust's request. After an examination of the potential claim, the Trustee determined that it was not colorable. The Trustee concluded that the Cash Collateral Order specifically authorized the payment of "reasonable, necessary costs and expenses of operating and maintaining its business, including . . . to suppliers and subcontractors necessary to maintain the continuation and going value of the Debtor." It was this provision of the Cash Collateral Order that allowed the Debtor to make the Post-petition Transfers. In the Trustee's view a claim under Bankruptcy Code § 549(a)(2)(B) would likely fail.[10]

The Trustee acknowledged at the Hearing that, even without merit, the causes of action potentially had some "hold up value." In the Trustee's reasoned opinion, however, claims lacking merit should not be brought merely to extort settlement. As an officer of the Court, the Trustee believed it was his duty not to do so.

The Trustee further considered that SunTrust was in a better position to police the Debtor's conduct during the pendency of the chapter 11 phase of this case than were the Joint Payees. At no point during the Blackout Period did SunTrust exercise its right to terminate the Debtor's use of cash collateral, despite the fact that SunTrust now alleges that the city jail project did not promote the continuation of the Debtor as a going concern. The Trustee, who is an experienced bankruptcy practitioner and a longstanding member of the panel of trustees,[11] expressed the concern that suing the Joint Payees would likely deter independent third parties from doing business with debtors in possession in other future cases. In the Trustee's view commencing such litigation could be highly detrimental to the bankruptcy system as a whole.

---

[10] There is serious question whether the Post-petition Transfers were even property of the estate. *See*, *Mid-Atlantic Supply, Inc. of Va. v. Three Rivers Aluminum Co.*, 790 F.2d 1121 (1986).

[11] The Office of the United States Trustee has established and maintains a panel of private trustees in each region that are eligible to serve as trustees in cases filed under chapter 7 of the Bankruptcy Code. *See* 28 U.S.C. § 586(a)(1).

Thus, exercising his sound business judgment, the Trustee determined that he should not commence these avoidance actions, that it was in the best interest of the bankruptcy estate overall to not seek to avoid the Post-petition Transfers, and that not pursuing these Post-petition Transfers would best facilitate the fair and efficient resolution of the bankruptcy case.[12]  The Court finds that the Trustee acted reasonably.  For all these reasons the Court entered its April 15, 2015 Order denying SunTrust's Motion.

ENTERED: May 18 2015

      /s/ Kevin R. Huennekens
UNITED STATES BANKRUPTCY JUDGE

Entered on Docket: May 18 2015

---

[12] The Court notes that, as the Trustee is paid on a commission basis, he had a financial incentive to recover the Post-petition Transfers, if it were appropriate to do so.